FRANCIS M. ROBINSON, Respondent, *v*. CHARLES W. SMITH, *et al*., Appellants.

*Supreme Court, Fourth Department, General Term, July 20, 1889.*

1. *Nuisance. What constitutes.*—The use of a barn as and for a livery stable, the keeping of horses therein, and the carrying on of the livery business at such barn, in such a manner as to cause disagreeable, offensive and unwholesome odors to arise therefrom and to permeate the adjoining dwelling house of plaintiff, constitute a private nuisance.

2. *Same.*—It is enough, in order to sustain an action for a nuisance, that the enjoyment of life and property has been rendered uncomfortable.

3. *Same. Injunction.*—An action, in such case, will lie to recover damages and to abate a nuisance.

4. *Same. Who liable.*—In an action to abate a nuisance, the party erecting the nuisance and the grantee of the premises on which it is situated may be united as defendants.

5. *Same.*—And where it is erected by a tenant with the lessor's knowledge, the latter is also liable.

6. *Same.*—Where a barn is built in a certain manner, and to be used in that way, and will necessarily, under ordinary circumstances, be a nuisance if let to a tenant to use in that way, and such use proves noxious or injurious to adjoining occupants, the owner subjects himself to liability for such injury.

7. *Evidence. Pleadings.*—A party may read in evidence a portion of his adversary's pleading, without reading the whole thereof.

8. *Same. Value.*—In an action for a nuisance, evidence as to the rental value of plaintiff's premises, before and after the creation of the nuisance, is competent on the question of damages.

9. *Same.*—In such action, the condition of the atmosphere in plaintiff's dwelling, from the erection of the nuisance down to the day of trial, may be shown.

10. *Same.*—So, proof that, after such erection, there had been a great congregation of flies about the premises, is legitimate.

11. *Trial. Direct question.*—A direct question to a party, in order to negative the testimony of the adverse party, is allowable.

12. *Injunction. Discretion.*—The allowance of an injunction to abate a nuisance, rests in the sound discretion of a court of equity.

13. *Appeal. Conflicting evidence.*—Findings on conflicting evidence will

be sustained, when made in accordance with the weight of evidence.

14. *Same. Refusal to find.*—The refusal to find on conflicting evidence furnishes no ground for a valid exception.

15. *Same. Immaterial requests.*—A refusal to find requests, not material to the decision or beneficial to the party, furnishes no ground for alleging error.

16. *Same. Exceptions.*—Exceptions, not argued on appeal and not supported by citation of authorities, are deemed frivolous.

Appeal from a judgment entered upon the report of a referee, awarding damages, and enjoining the defendants from carrying on a livery business at their barn in such manner that it will be a nuisance to the plaintiff and his premises.

Plaintiff is the owner of a house and lot situated on Leatherstocking street, in the village of Cooperstown, and defendant Smith is the owner of premises fronting on Chestnut street, adjacent to the premises of the plaintiff on the east.

The defendant Ellsworth, on the first day of April, 1887, took possession of the premises of Smith, and has ever since remained in the possession of the same as a tenant of the defendant Smith ; and Ellsworth, with the knowledge, and consent of Smith, erected upon the said premises of the defendant Smith a barn twenty-six feet wide and forty-six feet long, which has since been used and occupied for livery stable purposes, with the knowledge and consent of the defendant Smith. The barn was so constructed that the rear or westerly end thereof was distant four feet and seven and three-fourth inches from plaintiff's dwelling-house. There were six stalls, placed across the entire west end of the barn, and that portion thereof nearest the plaintiff's parlor, living and sleeping rooms in said house ; and there was a wooden box for storing manure, about three feet wide and deep and ten feet long, and a drive-way, which extended along in front of the plaintiff's parlor and distant therefrom about fifteen feet. About the 1st of May, 1887, defendant Ellsworth commenced to carry on the livery business, keeping several livery horses in said barn, and continued the

same down to the day of the trial of this action, and he deposited manure from the horses in the box and drew the same out once in five or six days until in the month of June, 1887, when he was ordered by the trustees and board of health of the village of Cooperstown not to put or keep any more manure in the box. After that date, and until some time in November, 1887, the manure was drawn away in barrels ; and from November, 1887, until the latter part of march, 1888, the manure was again put in said box, and was drawn away as it had been in the beginning ; and after the latter part of March, 1888, down to the trial of this action, the manure has been thrown into a wagon and drawn away from the driveway over Leatherstocking street.

The referee finds, as a matter of fact, viz. : " That in consequence of the said barn having been used as a livery stable, as aforesaid, ever since on or about, the 1st day of May, 1887, an offensive smell or odor has been emitted from said barn and from the manure so kept and stored, as aforesaid, to and upon the plaintiff's premises, and into and about the plaintiff's said dwelling-house and the several rooms therein, and has rendered the air over the plaintiff's premises and in his said dwelling-house disagreeable, unpleasant and offensive, and has been so intense, disagreeable and offensive that ever since about the 1st day of May, 1887, the plaintiff has been compelled to and has kept all the windows on the side of his said dwelling-house nearest to said livery barn closed, and has rendered the use of the plaintiff's premises and dwelling-house disagreeable, uncomfortable and unwholesome."

This action was commenced on the 25th day of January, 1888. On the 13th of December, 1887, the plaintiff caused a notice to be given to the defendant Smith, to the effect that the livery stable, and business carried on therein, was a nuisance to the plaintiff and greatly injured him in the comfort and enjoyment of his dwelling-house and premises, and

Smith was requested to abate the nuisance, but neglected wholly so to do.

The referee found that the plaintiff, since the first day of May, 1887, until the day of the trial of this action, to wit, the 10th day of July, 1888, " has sustained damages in consequence of said stable, and of the disagreeable, foul and offensive odors emitted therefrom over his said premises, and in the rooms of the dwelling-house situated thereon, in the difference of the fair rental value of his said premises, free from and subject thereto, in the sum of one hundred and seven dollars and fifty cents."

The referee found as a conclusion of law, viz. : " That the use of said barn as and for a livery stable, and the keeping of horses therein, and the carrying on of said livery business at said barn, and the disagreeable, offensive, foul and unwholesome odors arising therefrom over said plaintiff's premises, and in the rooms of his said dwelling-house situated thereon, is a private nuisance to him and is specially injurious to him and his said premises and his enjoyment thereof."

He also found that the plaintiff is " entitled to judgment in this action against the defendants, requiring them to abate the said nuisance and perpetually enjoining them, and each of them, from carrying on said livery business at said barn, it such manner that it will be a nuisance to said plaintiff and his premises."

*E. M. Haris* and *O. F. Matterson*, for appellants.

*A. C. Tennant*, for respondent.

HARDIN, P. J.—After a careful perusal of the evidence found in the appeal book, we are of the opinion that the findings of fact made by the referee are in accordance with the weight of the evidence, and while we find some conflict in the evidence, we think we should accept the findings of fact

made by the learned referee. In accepting such findings, we follow well-recognized authorities. Roosa v. Smith, 17 Hun, 138; Sinclair v. Talmadge, 35 Barb. 602; Titus v. Perry, 13 N. Y. State Rep. 237.

In Hay v. Cohoes Company (2 N. Y. [2 Comstock], 162), GARDINER, J., in speaking of the rights of adjacent owners, said : " They could not pollute the air upon the plaintiff's premises."

In Fish e. Dodge (4 Denio, 316), BRONSON, Ch. J., said : " It is a rule of the common law that a man should so use his own as not to hurt another, and therefore if one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages. . . . . . . . . . It is not necessary to a right of action, that the owner should have been driven from his dwelling ; it is enough that the enjoyment of life and property has been rendered uncomfortable."

In Hutchins v. Smith (63 Barb. 252), the doctrine of the cases just referred to, was stated, and many cases illustrative thereof collated and commented upon. We think the referee in his findings of fact and conclusions of law, has kept within the doctrine of the cases to which we have adverted.

Second. We are also of the opinion that the plaintiff was entitled to maintain an action wherein he should recover the damages sustained, and have an injunction requiring the abatement of the nuisance. In the case last cited, it was said, viz. : " There is ample authority to establish the right of the plaintiff to maintain a suit in which he may both recover damages for a nuisance, and remove it by the aid of the law. Citing 37 Barb. 301 ; 3 Sanf. 282 ; 46 Barb. 568 ; 56 Barb. 480."

In section 1660 of the Code of Civil Procedure, it is provided, viz. : " An action for a nuisance may be maintained in any case, where such an action might have been maintained under the laws in force, immediately before this act takes effect," and in Adams v. Popham (76 N. Y. 410)

it was held that " A person erecting or maintaining a common nuisance is liable to an action at the suit of another who has sustained special damages therefrom."

In section 1661 of the Code of Civil Procedure, it is provided, viz. : " A person by whom the nuisance has been erected, and a person to whom the real property has been transferred, may be joined as defendants in such an action." And in section 1662, it is provided, viz. : " A final judgment in favor of the plaintiff may award him damages, or direct the removal of the nuisance, or both." Before the adoption of the sections we have just quoted, such actions were maintainable, and there are numerous cases arising since the adoption of the provisions of the Code, which we have just cited, sustaining actions for a double purpose. Harrison *v.* Peck, 56 Barb. 252 ; Hutchins *v* Smith, 63 Barb. 252 ; Beir *v.* Cooke, 37 Hun 38 ; Horton *v.* Brownsey, 10 N. Y. State Rep.    800.

Third.    We think the action was maintainable against both of the defendants, and that the facts found establish a liability of both the defendants for the continuance of the nuisance, and that they were both proper parties, for the purpose of awarding damages, and ordering an abatement of the nuisance.

In Rosewell *v.* Prior (2 Salk. 460), the action was for a continuance of the nuisance. It was held that the landlord and tenants were both liable, and in speaking of the liability of the landlord, the court said : " He hath also rent as a consideration for the continuance, and therefore ought to answer the damage it occasions." Citing Jones, 272. Receipt of rent is upholding.

In Fish *v.* Dodge (4 Denio, 518), we find nothing inconsistent with what has already been said. It was there remarked that a defendant could not be liable for a wrong which was actually committed by others who were not in his employment, " unless he knew or had reason to believe that he was letting the property for a use which must prove injur-

ious to the plaintiff." In the case in hand, the defendant Smith knew of the purpose for which the barn was erected, and the purpose for which it was used, and the manner in which it was used ; although he was a resident of the city of Brooklyn, he had a summer residence near the village of Cooperstown, which he frequented summers.

In his answer served in this action, he admitted and stated : " That on or about the 1st of April, 1887, the defendant Ellsworth took possession of said premises of this defendant, and has ever since remained in the possession thereof, and now is in the possession of the same as the tenant of this defendant. That in or about the month of April, 1887, the defendant Ellsworth, with the knowledge and consent of this defendant, erected upon said premises a barn, and has used and occupied the same for livery purposes, with the knowledge and consent of said defendant, which barn so erected by said defendant Ellsworth this defendant allege was so erected at his (said Ellsworth's) own expense and risk, with the right to remove it from said premises at any time he might wish, or when this defendant should make other disposition of said premises."

Before this action was commenced he was informed of the nuisance, and requested to abate the same, but neglected so to do. Besides, it is apparent from the authorities, that where a barn is built in a certain way, and to be used in that way, and would necessarily, under ordinary circumstances, be a nuisance if let to a tenant to use in that way, and such use proves noxious or injurious to adjoining occupants, the owner subjects himself to liability for such injury. It is the duty of the owner to see to it that his premises are not used so as to injure his neighbor. *Pickard v. Collins*, 23 Barb. 445; *Fish v. Dodge, supra ;* The Conhocton Stone Co. *v.* The B., N. Y. E. R. R. Co., 52 Barb. 390 ; *Irwin v. Wood*, 4 Rob. 138; affirmed, 51 N. Y. 224 ; *Hanse v. Cowing*, 1 Lans. 288 ; *Beckwith v. Griswold*, 29 Barb. 291.

The learned counsel for the appellant supposes that

Pickard *v.* Collins aids his position that the defendant Smith was not liable. We think otherwise. In delivering the opinion in that case, the court observed : " If the use in that way would necessarily, under ordinary circumstances, be a nuisance, the proposition is correct ; but if it proved a nuisance by reason of water in the cellar, and that was a special unusual circumstance, the defendant was not liable for the nuisance, unless he knew, or had reason to believe, when he let the barn, that the use of it in the ordinary mode would prove a nuisance." We see nothing in the case inconsistent with the views already stated.

*Fourth.* Nor do we think the testimony of Dr. Lathrop, when read in connection with the evidence found in the appeal book, required the referee to find otherwise than appears by his report.

Nor do we think Flanagan *v.* Hollingsworth (2 How. N. S. 391 , S. C., affirmed 108 N. Y. 621), aids the appellants. That case differed very widely from the one now in hand in its facts. It turned upon the construction of a covenant, " not to erect any building for or to carry on, upon certain premises certain enumerated trades, cow-stables or hog-pens or any other dangerous, noxious, unwholesome or offensive establishment, trade or calling or business whatsoever," and it was held that under the exact language of the covenant a livery stable was not included, and hence the plaintiff was not entitled to an injunction.

We have looked at the several requests made to the referee to find certain enumerated facts and his refusals. In many instances there was a conflict in the evidence bearing upon the requests which were submitted to the referee. In such cases the refusal of the referee to find furnishes no ground for a valid exception. Porter *v.* Smith, 7 Civil Procedure Rep. 195. In other instances it is quite apparent that the findings asked for were not material to the decision of the case or would not have been beneficial to the defendants. The refusals and exceptions taken

thereto furnish no ground for alleging error. Callanan *v.* Gilman, 107 N. Y. 360 ; 12 N. Y. State Rep. 21 ; Stewart *v.* Morss, 79 N. Y. 629.

*Sixth.* We think no error was committed in allowing the plaintiff to read a portion of the defendant Smith's answer and the refusal to require the plaintiff to read the whole thereof as a condition of reading part in evidence. Parmenter *v.* Boston, H. T. & W. R. Co., 37 Hun, 354, and cases there cited. However, as at a latter stage of the case the defendant Smith read the whole of his answer in evidence (fol. 272), no further attention need be given to the ruling made by the referee allowing the plaintiff to read a portion of the answer. N. Y. & Lake C. Trans. Co. *v.* Hurd, 44 Hun, 17.

*Seventh.* An objection was taken to evidence offered to show the condition of the atmosphere in the plaintiff's dwelling from the time of the erection of the barn down to the time of the trial, and an especial objection was taken to the evidence as to its condition subsequent to the commencement of the action. The referee overruled the objection and the defendant excepted. We think no error was committed.

In Barrick *v.* Schifferdecker (16 N. Y. State Rep. 449), it was held that where an action was for both legal and equitable relief, " it was proper for the court to allow a recovery for damages done to the day of the trial." See, also, Beir *v.* Cooke, 36 Hun, 38.

*Eighth.* We think no error was committed in allowing the witness to describe that after the erection of the barn there had been a great " congregation of flies about the premises." It was a legitimate fact to be considered by the referee in connection with the other evidence.

*Ninth.* Defendant took objections to evidence of the rental value of the premises before the barn was erected and the rental value after the livery barn was erected. We think the evidence was legitimate, and that the referee committed no error in receiving the same.

In Barrick *v.* Schifferdecker (16 N. Y. State Rep. 449), it was held " that the measure of damages to the rental value of the house was the difference between the rental value when the house was free from the effects of the nuisance, and with it during the period of its continuance." Following the case of Francis *v.* Schoellkopf, 53 N. Y. 152.

*Tenth.* At folio 253, the plaintiff was allowed to answer a direct question, and state that he never said to the defendant Ellsworth, when he was about putting up the barn, " that it was all right." The defendant Ellsworth had given testimony to the effect in substance. We think it was allowable to put a direct question to the plaintiff to negative what had been testified to by the defendant Ellsworth.

Several other exceptions are referred to by folio in the appellant's points, but no argument is made in respect to the same. We, perhaps, would be right in assuming that as there is no argument or authority produced in regard to such exceptions, that they are frivolous ; however, we have carefully examined all the exceptions thus loosely and summarily referred to, and are of the opinion that they furnish no ground for interference with the report of the referee. Section 1003 of the Code of Civil Procedure. Whether an injunction should be allowed or not in such a case rests in the sound discretion of the court of equity, and in Davis *v.* Lambertson (56 Barb. 484), the late Judge FOSTER observed : " The discretion to be exercised in such cases is not, however, an unregulated discretion, but is to be exercised according to the rules of law applicable to each particular case." He then proceeds to comment upon authorities relating to the exercise of such discretion, and to very clearly demonstrate that where the facts are like those found in the case before us, the discretion should be exercised in favor of the party suffering by the nuisance. We are entirely satisfied with the direction in which the discretion was exercised, and approve of the conclusion of

the learned referee in awarding an injunction to abate the nuisance.

Judgment affirmed, with costs.

MARTIN, J., concurs.

MERWIN, J.—I concur, except I doubt the liability of the defendant Smith for any damages accruing prior to December 13, 1887.