Filed 10/28/13  Andy's BP v. Shirazi CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ANDY'S BP, INC., <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> AMIR SHIRAZI et al., <br><br>     Defendants and Respondents. | H037797 <br> (Santa Clara County <br> Super. Ct. No. CV109341) |

The present appeal involves a dispute between two rival gas stations.  Appellant Andy's BP, Inc. brought an action against respondents Amir Shirazi, individually and dba Moe's Stop and The Mohammad M. Shirazi Living Trust, alleging that respondents sold gas below cost.  Following trial, the jury found in favor of respondents.  On appeal, appellant contends:  (1) the trial court erred when it mandated that appellant file a supplemental complaint, (2) the good faith competition defense raised in the answer to the supplemental complaint did not operate as a defense to the first amended complaint, (3) the answer to the supplemental complaint did not plead facts necessary to support the good faith competition defense, and (4) there was insufficient evidence of the good faith competition defense.  We affirm the judgment.

## I. Statement of the Case

In January 2010, appellant filed a first amended complaint for damages and injunctive relief.[1] Appellant alleged that respondents sold gas at below cost from April 1, 2005 to April 1, 2008. Appellant alleged causes of action for unfair trade practices, unlawful sales of loss leaders, unlawful competition, unfair competition, interference with prospective business advantage, and conspiracy to defraud.

A month later, respondents filed an answer in which they asserted: (1) the first amended complaint failed to state sufficient facts to constitute any cause of action, (2) each cause of action was barred by the statute of limitations, (3) appellant had unclean hands and was not entitled to equitable relief, (4) appellant failed to mitigate damages, and (5) damages were offset by damages sustained by each defendant as alleged in their cross-complaint.

In June 2010, respondents filed a first amended cross-complaint for damages and injunctive relief against appellant, Andy Saberi, and Thomas Saberi. Respondents alleged causes of action for unfair trade practices and interference with prospective business advantage. Respondents alleged appellant, Andy Saberi, and Thomas Saberi sold gas below cost from April 1, 2004 to April 1, 2008.

In November 2010, appellant, Andy Saberi, and Thomas Saberi filed their answer to the first amended cross-complaint, and included a good faith competition defense.[2]

In June 2011, appellant filed various motions in limine. Trial was continued to September 2011. The trial court granted appellant's motion in limine to exclude all

---

[1] Though the complaint is not included in the record on appeal, the parties indicate that it was filed on April 1, 2008.

[2] This pleading is labeled as "CROSS-DEFENDANTS ANSWER TO CROSS-COMPLAINT." However, appellant refers to the pleading as the answer to the first amended cross-complaint. Given that this answer was filed after respondents filed their first amended cross-complaint, we will also refer to it as the answer to the first amended cross-complaint.

evidence of any affirmative defenses that were not alleged in the answer to the first amended complaint.

On September 20, 2011, jury trial began. On October 4, 2011, one day before the last day of testimony, respondents submitted a proposed jury instruction that limited appellant's damages to the period prior to the filing of the complaint.

Appellants filed a supplemental first amended complaint to preserve its right to seek damages after the date of filing of the original complaint in April 2008. Respondents filed an answer to the supplemental first amended complaint and included the good faith competition defense.

Based on the special verdicts of the jury, judgment on the complaint was entered in favor of respondents and judgment on the cross-complaint was entered in favor of appellant, Andy Saberi, and Thomas Saberi.

## II. Statement of Facts[3]

Respondents' gas station is called Moe's Stop and is located on the corner of 33rd Street and McKee Road. Appellant's gas station is called Gas and Shop and is located at the same intersection. There are over 15 other gas stations in the vicinity of the parties' gas stations.

Amir Shirazi has been managing Moe's Stop since his father died in 2001. His father had set up a trust, which now owns Moe's Stop and several rental properties. Shirazi and his mother are co-trustees of the trust. Shirazi does not receive a salary from the trust for his managerial duties though he receives funds when the trust can afford to do so. Appellant was incorporated in 2002 or 2003 and currently owns 10 gas stations.

---

[3] Since respondents have not filed a cross-appeal, we do not summarize the evidence that appellant sold gas below cost and was attempting in good faith to meet the competition.

3

Andy Saberi and his son Thomas Saberi are the sole members of appellant's board of directors.

Preet Ravinder Singh Kahlon, an employee of Gas and Shop, testified that he prepared daily price sheets reflecting the prices of gas sold in the vicinity of appellant's gas station, including Moe's Stop. He faxed the information to Andy Saberi, who then set the price at his station. Andy Saberi testified that he closed his station "lots of times" rather than sell below invoice cost.

Dr. Gilbert Coleman, who was qualified as an expert in economics, testified that Moe's Stop sold gas at below its invoice cost approximately 21 percent of the time between April 2005 and March 31, 2011, and below its cost of doing business, excluding the general manager, approximately 61 percent of the time. According to Coleman, if the cost of a manager was included in calculating operating costs, Moe's Stop sold gas below its operating costs approximately 67 percent of the time.

Shirazi testified that one of his duties included setting the prices for gas at Moe's Stop. Shirazi set gas prices at the station based on the market, cost, and inventory. He conducted daily surveys on gasbuddy.com of gas prices at other gas stations, including Gas and Shop. When the prices were "really low" on the Web site, he drove by the station to check their accuracy. If Gas and Shop's price was less expensive, he recorded it on the Web site "so then [he could] benefit off his cheaper price as well." When the price at Moe's Stop was more expensive than at Gas and Shop, customers went to Moe's Stop only if they did not want to wait in line. He explained that if not much gas was being sold, he looked at his cost and inventory and lowered the price "if [he] could." In 2010, Shirazi began a calendar in which he recorded the price differences between the two gas stations as well as other gas stations, and "then [he] would go as far as [he could] close to his price." When gas prices were rising, Shirazi did not sell gas below the price of Gas and Shop because he wanted to maintain inventory. However, when prices were decreasing, and if his volume was low, he priced his gas lower than that of Gas and Shop.

4

### III. Discussion

### A. Supplemental Complaint

Appellant contends that "the trial court committed prejudicial error when it mandated that appellant file a supplemental complaint in order to recover damages accruing after the first amended complaint was filed." (Capitalization & boldface omitted.) Appellant further contends that the trial court's ruling was prejudicial because it allowed respondents to file an answer, which asserted the good faith competition defense.

### 1. Background

The first amended complaint alleged that appellant had been damaged by defendants' below-cost sales of gas from April 1, 2005 to April 1, 2008. The answer to the first amended complaint did not include a good faith competition defense. Prior to trial, appellant filed a motion in limine to exclude all evidence as to any affirmative defense not pleaded in the answer, and the trial court granted the motion.

On October 4, 2011, which was one day before the last day of testimony, the parties were discussing respondents' subpoena of documents from May 2011 to September 2011. Appellant's counsel stated that the parties had stipulated that damages would be limited to the end of March 2011. However, respondents' counsel stated that their position was that "damages must precede the filing of the complaint," and that the documents were relevant to prove the need for injunctive relief. On the same day, respondents submitted a proposed jury instruction that limited appellant's damages to the period prior to the filing of the complaint on April 1, 2008.

On October 5, 2011, appellant brought a motion to exclude any evidence regarding damages after April 2011 on the ground that the parties had agreed to limit the damages period. Respondents' counsel, however, reiterated their position that damages were limited to the period prior to the filing of the complaint. The trial court then invited the parties to provide statutory and case authority for their positions.

5

The following day, respondents filed a brief setting forth statutory and case authority supporting a jury instruction limiting damages to the period prior to the filing of the complaint. After stating its observation that the case had been litigated with the understanding that the jury would be asked to determine whether there was liability for selling below-cost gas after the complaint was filed, the trial court asked respondents' counsel whether this was incorrect. Respondents' counsel asserted that he had a different understanding, stating that he had "said this to the jury, that the whole period is being looked at because it's all relevant to the motivation, the purpose of the people involved so it's relevant for that reason."[4] He also pointed out that the parties' ongoing behavior was relevant because an injunction had been sought.

Appellant's counsel stated that he did not recall respondents' counsel's statement that damages might be limited and that respondents' counsel had never previously referred to the requirement of filing a supplemental complaint during any of their discussions. He also disputed that the evidence of damages after the filing of the complaint was relevant to the requests for injunctive relief. Appellant's counsel further argued that "[t]here is no requirement for supplemental pleading when the issue is just

_____

[4] In his opening statement, respondents' counsel stated: "Now, the other thing about this case is that we can talk about the last six years. . . . But there may be slightly more limited period of time that you may end up focusing on, and that is that this case is filed in 2008 and lawsuits speak as of the time they're filed. The judge will have to rule on this. And the period that's important is leading up to the filing of that lawsuit. And the allegation in the complaint here is that for the three-year period preceding the filing of that lawsuit, there were under cost sales at different times but just generally stated for the purpose of putting us out of business, and if you were to conclude that and you could see damages stemming from that that were proven, then you would look at that. [¶] The same would be true with our cross-complaint, that our cross-complaint we say goes back to a period of four years prior to the filing of the April Fools Day 2008 complaint, and the issue about going forward, there may be things that have happened since that are instructive in terms of who's out to get whom, but whether or not there's going to be any issue of damages for that period is something that the Court will have to define for you before we're all done."

6

really damages." The trial court responded: "[T]he issue, I think, is a little more difficult than that because on April 2, 2008, you're claiming that he sold below cost on that day and it injured you. Then that is conduct. It's not damage accruing from pre-filing conduct. So I think there is a distinction. [¶] My concern is sort of the way the case has been tried. You're essentially arguing some type of waiver argument. [¶] So here's what I'm going to do. I'm going to think about it little bit more. I don't want to keep our jurors waiting any more than we have to, but I'll invite both of you to draft and file a supplemental complaint in the next 20 minutes if you choose to do so, and I'll shorten the time for hearing the motion on that, and I'll shorten the time for you to answer, and I'll allow you to answer verbally."

Appellant's counsel then filed a supplemental first amended complaint for damages and injunctive relief, which was based on the prior pleadings and also included a request for liability and damages for the period through April 30, 2011. The trial court stated: "And, again, let me reiterate the reasons for my allowing both parties, upon election, to file supplemental complaints was in the interest of equity in my conception of how the case had been litigated and felt that it was appropriate under all the circumstances." Respondents' counsel stated that he would not file a supplemental complaint, but he wanted to file a supplemental answer that included the good faith competition defense. Appellant's counsel responded by arguing that there had been no evidence of the good faith competition defense.

Following a break, the trial court stated: "I received a filed answer to amended supplement complaint filed by [respondents' counsel] on behalf of defendant and for cross-complainant. Also received from [respondents' counsel] a typed up version of time period instruction that we previously discussed. I've inserted that in our packet. [¶] And I received from plaintiffs' counsel revised verdict forms, as well as revised versions of CACI 3333 which now encompass both defendants and cross-defendants with respect to the affirmative defense to below-cost sales, and 3335 also encompassing both defendants

7

and cross-defendants with respect to good faith definition." After the trial court asked if there was anything else that counsel wished to place on the record, appellant's counsel stated his objection that respondents had failed to plead or prove the elements of the good faith competition defense. The trial court overruled the objection.

## 2. Legal Analysis

Code of Civil Procedure section 464, subdivision (a) permits a party, upon motion, to file a supplemental complaint "alleging facts material to the case occurring after the former complaint or answer." "The complaint, whether original or amended, can properly speak only of things which occurred either before or concurrently with the commencement of the action. The office of a supplemental complaint is to bring to the notice of the court and the opposite party things which occurred after the commencement of the action, and which do or may affect the rights asserted and the relief asked in the action as originally instituted." (*California Farm & Fruit Co. v. Schiappa-Pietra* (1907) 151 Cal. 732, 742-743, superseded by statute on another point as stated in *Resure, Inc. v. Superior Court* (1996) 42 Cal.App.4th 156.) In ruling on a motion to file a supplemental pleading, "[i]t is the general policy that courts should exercise liberality in permitting the filing of supplemental pleadings when the alleged 'occurring-after' facts are pertinent to the case. [Citations.] Nonetheless, the motion to file a supplemental pleading is addressed to the sound legal discretion of the court, and its ruling will not be disturbed on appeal in the absence of a showing of a manifest abuse of that discretion. [Citations.]" (*Flood v. Simpson* (1975) 45 Cal.App.3d 644, 647.)

As a preliminary matter, we note that the trial court did not mandate that appellant file a supplemental complaint. Appellant could have chosen to proceed on its first amended complaint and then file a second lawsuit for the period after the filing of the original complaint on April 1, 2008, and the time of trial. However, given that appellant did file a supplemental first amended complaint and appellant presented evidence of damages for the below-cost sales that occurred until April 30, 2011, the trial court did not

8

abuse its discretion in allowing the parties to submit supplemental pleadings that included the conduct that occurred after the complaint was filed.

Appellant argues, however, that it was not required to file a supplemental complaint in order to recover damages that accrued after the filing of its original complaint. Appellant relies on Civil Code section 3283, which provides: "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future."

The present case did not involve prospective damages. Coleman calculated appellant's damages for each day that respondents sold gas either below their invoice cost or their cost of doing business. Coleman's calculations did not include future losses caused by respondents' conduct. Thus, since appellant did not suffer any loss after the filing of the complaint as a result of respondents' sales of below-cost gas prior to the filing of the complaint, Civil Code section 3283 is inapplicable.

Moreover, appellant's reliance on *Berry v. Bank of Bakersfield* (1918) 177 Cal. 206 (*Berry*) and *Collins v. Sargent* (1928) 89 Cal.App. 107 (*Collins*) is misplaced. In *Berry*, the plaintiff deposited with the defendant bank shares of stock in an oil company as security for the payment of a note to the defendant. (*Berry*, at p. 207.) After the plaintiff tendered the balance due on the note, the defendant refused to deliver the shares of stock. (*Ibid.*) Following trial, the court found in favor of the plaintiff. (*Id.* at pp. 207-208.) The trial court found, among other things, that the value of the stock decreased in value while the action was pending and awarded as damages the difference between the value of the shares at the time the complaint was filed and at the time of trial. (*Id.* at p. 208.) The California Supreme Court reasoned that "[t]he depreciation in the value of property unlawfully detained by a defendant is an element of damage naturally to be anticipated, and therefore covered by an averment of general damage," (*id.* at p. 210) and held that no supplemental pleading was required. (*Id.* at p. 211.) In contrast to the

9

ongoing conduct in *Berry*, here, appellant alleged below-cost sales that did not result in damages after the complaint was filed.

In *Collins*, *supra*, 89 Cal.App. 107, the plaintiff sought and obtained an injunction to restrain the defendants from using explosives in a gravel pit that was adjacent to the plaintiff's home. (*Id.* at p. 110.) On appeal, the defendants argued that the trial court erred in admitting evidence of explosions that occurred after the complaint was filed, because no supplemental complaint had been filed. (*Id.* at p. 112.) The appellate court rejected this argument and stated: "The relief administered in equity is such as the nature of the case, and the facts as they exist at the close of the litigation, demand; and supplemental complaints are not required in actions in equity in order to bring before the court those facts and circumstances occurring since the filing of the original complaint, which bear as evidence upon the facts in issue in the original cause. It would be surplusage if they were set up in a supplemental pleading, and equity does not require a useless thing. [Citations.]" (*Id.* at pp. 112-113.) Here, unlike in *Collins*, the issue was whether appellant was entitled to damages, not injunctive relief.

### B. Good Faith Competition Defense

Appellant next contends that the good faith competition defense raised in the answer to the supplemental first amended complaint applied only to events that occurred after the original complaint was filed.

"[A] supplemental complaint which is treated as such does not supersede the original—both remain as subsisting pleadings. [Citation.]" (*MacMorris Sales Corp. v. Kozak* (1968) 263 Cal.App.2d 430, 439.)

Here, the supplemental first amended complaint for damages and injunctive relief repeated the allegations of the first amended complaint, expanded the time periods in paragraphs 15 and 24, and eliminated certain causes of action. However, even assuming that the supplemental first amended complaint did not replace the first amended

complaint, the issue has been forfeited.  A party forfeits a claim of error when he or she fails to object before the trial court, and thus prevents the trial court from avoiding or curing any error.  (*Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1.)  Appellant did not object to either the jury instructions or the verdict form on the ground that respondents' good faith competition defense applied only to conduct occurring after the original complaint was filed.

### C.  Sufficiency of Facts Alleged in Answer to Supplemental
### First Amended Complaint

Appellant also argues that the answer to the supplemental first amended complaint fails to allege "the ultimate facts necessary to support the good faith competition defense."  (Capitalization & boldface omitted.)  Appellant asserts that the answer "does not allege that the price was an endeavor to meet the legal price of a competitor."

Code of Civil Procedure section 431.30, subdivision (b) states:  "The answer to a complaint shall contain:  [¶]  (1)  The general or specific denial of the material allegations of the complaint controverted by the defendant.  [¶]  (2)  A statement of any new matter constituting a defense."  " 'The phrase "new matter" refers to something relied on by a defendant *which is not put in issue by the plaintiff*.  [Citation.]  Thus, where matters are not responsive to essential allegations of the complaint, they must be raised in the answer as "new matter."  [Citation.]' "  (*Walsh v. West Valley Mission Community College Dist.* (1998) 66 Cal.App.4th 1532, 1546.)

The answer to the supplemental first amended complaint states:  "Defendants Amir Shirazi and The Mohammad M. Shirazi Living Trust answer the amended/supplemental complaint filed October 6, 2011, by generally denying its allegations and by asserting the good faith/meeting competition affirmative defense(s) (as also asserted by Cross-Defendants in their answer to the operative First Amended Cross-Complaint)."  The answer to the first amended cross-complaint alleges:  "All of the

11

Cross-Defendants' actions with reference to the matters alleged in the Cross-Complaint, . . . [were] lawful because Cross-Defendants [were] endeavoring in good faith to meet competition and meet the prices of one or more of Cross-Defendants' Competitors selling the same article or product in the same locality or trade area and in the ordinary channels of trade." Since respondents' answer incorporated the allegations in appellant's answer, they pleaded sufficient facts to support their affirmative defense.

### D. Sufficiency of Evidence of Good Faith Competition Defense

Appellant contends that there was insufficient evidence of the good faith competition defense.

" 'When a finding of fact is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether there is any substantial evidence contradicted or uncontradicted which will support the finding of fact.' " (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881; accord *Gray v. Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 503.) "Substantial evidence is evidence of ponderable legal significance, reasonable, credible and of solid value. [Citation.] However, '[s]ubstantial evidence . . . is not synonymous with "any" evidence.' [Citation.] Instead, the evidence must be ' "substantial" proof of the essentials which the law requires.' " (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.)

The prohibition against sales below cost does not apply to "any sale made" "[i]n an endeavor made in good faith to meet the legal prices of a competitor selling the same article or product, in the same locality or trade area and in the ordinary channels of trade." (Bus. & Prof. Code, § 17050, subd. (d).)

Here, Andy Saberi testified that he closed Gas and Shop rather than sell below his invoice cost. When Gas and Shop was open, Shirazi set gas prices at Moe's Stop based on the market, cost, and inventory. Shirazi recorded the price difference between the two

12

gas stations and "then [he] would go as far as [he could] close to his price." When gas prices were rising, Shirazi did not sell gas below the price of Gas and Shop because he wanted to maintain inventory. However, when prices were decreasing, and if his volume was low, he priced his gas lower than that of Gas and Shop. Thus, there was sufficient evidence for the jury to find that Shirazi acted in good faith to meet appellant's legal prices.

## IV. Disposition

The judgment is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Grover, J.

13